Irwin SCHIFF, Plaintiff-Appellant,

v.

SIMON & SCHUSTER, INCORPORATED, Defendant-Appellee.

No. 1310, Docket No. 85–7112.

United States Court of Appeals, Second Circuit.

Argued June 5, 1985.

Finally Submitted After Reinstatement Nov. 21, 1985.

Decided Dec. 31, 1985.

Irwin Schiff, Hamden, Conn., pro se.

Minna Schrag, New York City (Ronald S. Rauchberg, Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief), for defendant-appellee.

(Alan H. Nevas, U.S. Atty., New Haven, Conn., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paul, William S. Estabrook, John A. Dudeck, Jr., Tax Div., Dept. of Justice, Washington, D.C., filed a brief for the U.S. as amicus curiae.)

Before FEINBERG, Chief Judge, MESKILL and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This is an appeal in a somewhat ironic lawsuit. Some years ago Irwin Schiff, the appellant, wrote a book entitled *How Anyone Can Stop Paying Income Taxes.* Simon & Schuster, the appellee, decided to distribute the book, apparently giving more consideration to the book's potential for profit than to its message. The book produced royalties for its author. The Internal Revenue Service sought to levy upon those royalties to collect taxes owed by Schiff. Simon & Schuster honored the levy. Schiff then brought this suit against Simon & Schuster, claiming that it had honored an improperly perfected levy and was liable to him for the sums paid to the IRS. Some might say that Schiff was taking a chapter from his own book. Others might say that Simon & Schuster should have judged this book by its cover. The District Court said that Schiff's legal position had no merit. We say the District Court was correct, and we therefore affirm.

This case is a minor skirmish in Schiff's ongoing—and losing—battle against the IRS. Schiff has not filed tax returns since 1973; he has been convicted of income tax evasion and has sought without success to enjoin the IRS from collecting taxes assessed against him for tax years 1976,

1977, and 1978. In 1979, this Court described Schiff as "an extremist who reserve[s] the right to interpret the decisions of the Supreme Court as he read[s] them from his layman's point of view regardless of and oblivious to the interpretations of the judiciary." *United States v. Schiff,* 612 F.2d 73, 75 (2d Cir.1979).

Under the terms of the contract with Schiff, Simon & Schuster was to distribute the book and deliver the proceeds to him after deducting its own fees, charges and expenses. On May 26, 1983, the IRS served a notice of levy and an attested copy of a federal tax lien on Simon & Schuster for $197,044.19 in taxes due and owing by Schiff for the years 1976 through 1978. After an exchange of correspondence and the issuance of a second notice of levy on December 2, 1983, Simon & Schuster paid the IRS $34,974, and subsequently an additional $99,000, from appellant's share of his book's sale proceeds. On January 4, 1984, Schiff instituted this action, seeking damages from Simon & Schuster, the Commissioner of Internal Revenue, the Secretary of the Treasury, and two IRS officials. He claimed that by honoring the notices of levy, Simon & Schuster had committed fraud and breach of contract, and that Simon & Schuster had conspired with the federal government to deprive him of his constitutional rights. On April 6, 1984, appellant voluntarily dismissed his action against the federal defendants by stipulation. Subsequently, the District Court for the District of Connecticut (Warren W. Eginton, Judge) dismissed appellant's complaint against Simon & Schuster for failure to state a claim and then denied appellant's motion to amend the judgment. This appeal followed.[1]

## DISCUSSION

The Internal Revenue Code requires that "any person in possession of (or obligated

---

1. The appeal was previously dismissed without prejudice for appellant's failure to pay double costs and damages previously imposed by this Court as a sanction for a frivolous appeal in an earlier case. *Schiff v. Simon & Schuster, Inc.,*

766 F.2d 61 (2d Cir.1985) (per curiam). Upon Schiff's payment of the $2,758.40 owed to the Internal Revenue Service as an appellate sanction, the appeal was reinstated, and the views of the Government were invited.

with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate...." 26 U.S.C. § 6332(a). Failure or refusal to surrender to the IRS property subject to levy creates personal liability for the amount not surrendered, plus costs and interest. *Id.* § 6332(c)(1). Compliance with the obligation to honor the levy extinguishes liability to the claimant of the property. *Id.* § 6332(d).

Only two circumstances justify non-compliance with a levy: Either the person levied upon is not in possession of the property or the property is subject to a prior judicial attachment or execution. *United States v. Sterling National Bank & Trust Co.*, 494 F.2d 919, 921 (2d Cir. 1974). Appellant does not contend that either of these circumstances existed in this case. The fact that appellant disputes the validity of the underlying tax assessment does not alter Simon & Schuster's obligation to honor the levy, *see United States v. Augspurger*, 508 F.Supp. 327, 328–29 (W.D.N.Y.1981).

Appellant contends that the IRS, by using a "Notice of Levy" form rather than a "Levy" form, did not properly make a levy upon his property; therefore, Schiff asserts, Simon & Schuster was entitled to disregard the notice of levy and was even barred from complying with its demands. This argument is absolutely meritless. Appellant ignores 26 U.S.C. § 6331(b), which states that "[t]he term 'levy' ... includes the power of distraint and seizure *by any means*" (emphasis added). It is well established that a "[l]evy on property in the hands of a third party is made by serving a notice of levy on the third party." M. Saltzman, *IRS Practice and Procedure* ¶ 14.15 at 14–70 (1981). The Treasury Regulations expressly provide that a "[l]evy may be made by serving a *notice of levy* on any person in possession of, or obligated with respect to, property or rights of property subject to levy...." 26 C.F.R. § 301.-

6331–1(a)(1) (emphasis added). Because these regulations have long been in effect without substantial change, they are "deemed to have received congressional approval and have the effect of law." *Helvering v. Winmill*, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52 (1938) (footnote omitted). Contrary to appellant's claims, the regulations are neither unreasonable nor plainly inconsistent with the terms of the statute; they must therefore be sustained. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).

Without exception the case law supports the use of a notice of levy. *E.g., United States v. National Bank of Commerce*, — U.S. ——, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985) ("In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to section 6332(a). This notice gives the IRS the right to all property levied upon...."); *Phelps v. United States*, 421 U.S. 330, 335, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975) ("[t]he notice of levy and demand served on the assignee were an authorized means of collecting the taxes ..."); *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1302 (8th Cir.1980) ("[t]he usual and recognized means of distraint and seizure of property is a notice of levy"); *United States v. Sterling National Bank & Trust Co., supra*, 494 F.2d at 920 (IRS levied on bank account by serving notice of levy on bank). In sum, there is nothing to call into question the validity of either the notice of levy or Simon & Schuster's compliance with it.

We have considered all of appellant's remaining claims and find them to be equally without merit. The judgment of the District Court is affirmed.