Irwin A. SCHIFF, Appellant,

v.

UNITED STATES of America, Appellee.

No. 196, Docket 90–6085.

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1990.

Decided Nov. 21, 1990.

Irwin A. Schiff, New York City, pro se.

Joel A. Rabinovitz, Dept. of Justice, Washington, D.C. (Stanley A. Twardy, Jr.,

U.S. Atty., Hartford, Conn., Shirley D. Peterson, Asst. Atty. Gen., Gary A. Allen, and Ann B. Durney, Dept. of Justice, Washington, D.C., on the brief), for appellee U.S.

Before FEINBERG, TIMBERS and MINER, Circuit Judges.

PER CURIAM:

Appellant Irwin A. Schiff appeals from a summary judgment entered September 13, 1989, in the District of Connecticut, Warren W. Eginton, *District Judge*, in favor of appellee United States in an action commenced by Schiff challenging the assessment and collection of income tax deficiencies owed for the years 1976 through 1978 and penalties imposed.

On appeal, Schiff contends that (1) the tax was collected in violation of the taxing and due process clauses of the Constitution; (2) the tax deficiencies were not properly assessed and collected; (3) the district court erred in granting summary judgment on the issue of civil fraud penalties; and (4) the district judge erred in failing to recuse himself since he ruled against Schiff in a previous case. The government seeks costs and damages for a frivolous appeal.

For the reasons that follow, since we agree with the district court that there is no genuine issue of material fact, we affirm the summary judgment of the district court and impose sanctions on Schiff for bringing a frivolous appeal.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Schiff is no stranger to this court. This is another in a series of cases involving Schiff's refusal to pay income taxes. *E.g., United States v. Schiff*, 876 F.2d 272 (2 Cir.1989); *United States v. Schiff*, 801 F.2d 108 (2 Cir.1986), *cert. denied*, 480 U.S. 945 (1987); *Schiff v. Simon & Schuster, Inc.*, 780 F.2d 210 (2 Cir.1985); *Schiff v. Simon & Schuster, Inc.*, 766 F.2d 61 (2 Cir.1985) (per curiam); *Schiff v. Commis-*

*sioner*, 751 F.2d 116 (2 Cir.1984) (per curiam); *United States v. Schiff*, 647 F.2d 163 (2 Cir.), *cert. denied*, 454 U.S. 835 (1981); *United States v. Schiff*, 612 F.2d 73 (2 Cir.1979). The instant appeal arises from Schiff's failure to pay income taxes for the years 1976 through 1978.

Schiff filed no tax returns at all for the years 1977 and 1978. In April 1977, Schiff did file a Form 1040 with the Internal Revenue Service (IRS) for the year 1976. That form set forth his name, address and social security number. He did not provide financial information in the relevant portions of the return, but instead placed asterisks in the columns and typed in the margin "I DO NOT UNDERSTAND THIS RETURN NOR THE LAWS THAT MAY APPLY TO ME. THIS MEANS THAT I TAKE SPECIFIC OBJECTION UNDER THE 4th or 5th AMENDMENTS OF THE U.S. CONSTITUTION TO THE SPECIFIC QUESTION." On page two of the return, Schiff also placed asterisks in the columns and typed at the bottom "THIS MEANS THAT SPECIFIC OBJECTION IS TAKEN TO THE SPECIFIC QUESTION ON THE GROUNDS OF THE 4th AND 5th AMENDMENTS OF THE UNITED STATES CONSTITUTION."

Schiff attached a letter to his Form 1040 addressed to the District Director of the IRS. That letter stated that Schiff had received federal reserve notes in 1976, which he distinguished from taxable dollars. Schiff concluded that federal reserve notes were worthless since he could exchange them only for other federal reserve notes, but not for gold or silver. In support of his contention that federal reserve notes are not dollars, Schiff attached a letter from Russell L. Munk, Assistant General Counsel of the Department of the Treasury, that so stated. That letter also stated that the fact that federal reserve notes could not be exchanged for gold or silver did not render them worthless. The letter concluded by warning Schiff that "there is no legal basis for an arguement [sic] that a taxpayer need not file a return of his income, expressed in dollars, on the

ground that Federal Reserve Notes are not 'dollars'...."

On December 2, 1982, the IRS sent Schiff a notice of deficiency with explanations for the years 1976 through 1978. Although the notice informed Schiff of his right of review, Schiff did not challenge those determinations in the Tax Court. Accordingly, on April 1, 1983, the IRS assessed deficiencies in tax plus interest and penalties for failure to pay estimated taxes and for fraud for the years 1976 through 1978. Schiff was notified of the assessments by IRS Form 3552. He was assessed a total of $41,837.35 for 1976, $39,-760.99 for 1977, and $110,247.89 for 1978. The form notified Schiff that payment was due within ten days. On April 18, 1983, having received no response from Schiff, the IRS sent him a final notice stating that enforcement action would be taken if he did not make payment within ten days.

Schiff did not satisfy the tax deficiency. The IRS therefore levied on royalties owed to him by Simon & Schuster, the publisher of a book he wrote entitled "How Anyone Can Stop Paying Income Taxes." Schiff's attempt to stop the IRS collection effort failed. *Schiff v. Simon & Schuster, Inc.,* 780 F.2d 210 (2 Cir.1985).

On May 11, 1985, Schiff filed claims for refunds of the amounts the IRS had collected for the years 1976 through 1978. The IRS denied those claims. Schiff commenced the instant action on October 9, 1986, seeking refunds for the years in question. On April 20, 1989, Schiff moved for summary judgment. The government filed a cross-motion for summary judgment on June 12, 1989. On September 6, 1989, the district court granted the government's cross-motion for summary judgment. Judgment was entered on September 13, 1989. Schiff filed two subsequent motions for reconsideration. Both were denied.

This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo. EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,* 905 F.2d 8, 10 (2 Cir.1990). Summary judg-ment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Since summary judgment was granted in favor of the government, we consider the evidence in the light most favorable to Schiff. *E.g., EAD Metallurgical, supra,* 905 F.2d at 10.

## III.

With the foregoing in mind, we turn to the merits of Schiff's appeal. We hold that all of his claims are completely lacking in merit.

Initially, Schiff's contentions that the imposition of a validly enacted income tax by Congress violates the taxing clauses of the Constitution have been rejected previously. *E.g., Brushaber v. Union Pacific R.R. Co.,* 240 U.S. 1, 19–20 (1916); *Schiff v. Commissioner, supra,* 751 F.2d at 117; *Ficalora v. Commissioner,* 751 F.2d 85, 87 (2 Cir. 1984), *cert. denied,* 471 U.S. 1005 (1985).

Schiff's due process claim likewise is frivolous. He contends that the assessments amounted to a taking of property without due process. The notice of deficiency sent to Schiff clearly informed him of his right to appeal to the Tax Court. Such an appeal would have provided Schiff with an opportunity to be heard and to contest the IRS' calculations. Schiff chose not to avail himself of that opportunity.

We turn next to Schiff's claims regarding the propriety of the IRS' assessments. First, Schiff contends that since 26 U.S.C. § 6201(a)(1) (1988) requires that assessments be made from returns or lists, the IRS must prepare a substitute return pursuant to 26 U.S.C. § 6020(b) (1988) prior to assessing deficient taxes. It is clear, however, that when a taxpayer does not file a tax return, it is as if he filed a return showing a zero amount for purposes of assessing a deficiency. There is no requirement that the IRS complete a substitute return. *Roat v. Commissioner,* 847

F.2d 1379, 1381 (9 Cir.1988); 26 C.F.R. § 301.6211–1(a) (1990); *see also Laing v. United States,* 423 U.S. 161, 174 (1976) ("Where there has been no tax return filed, the deficiency is the amount of tax due").

■ Schiff also contends that the IRS must use Form 17 to provide notice of a deficiency and make a demand for payment. The Secretary of the Treasury is required to provide notice of a deficiency and make a demand for payment within 60 days of an assessment. 26 U.S.C. § 6303(a) (1988). In the instant case, the IRS gave timely notice to Schiff, using Form 3552. That form clearly stated the amount due and that payment must be made within 10 days. There is no requirement that the Secretary use a specific form to provide notice of a deficiency to a taxpayer. *Planned Inv., Inc. v. United States,* 881 F.2d 340, 343–44 (6 Cir.1989).

■ Schiff further contends that the assessment against him for taxes owed for the year 1976 was barred by the statute of limitations. Generally, an assessment must be made within three years of the filing of a tax return. 26 U.S.C. § 6501(a) (1988). When no return is filed, however, an assessment may be made at any time. 26 U.S.C. § 6501(c)(3) (1988). Schiff's tax return for 1976 set forth no financial information at all. For statute of limitations purposes, such a return is treated as if no return was filed. *Morgan v. Commissioner,* 807 F.2d 81, 82 (6 Cir.1986).

In short, we find no merit whatsoever in any of Schiff's claims with respect to the propriety of the IRS' assessments and their collection.

■ We turn next to Schiff's contention that the district court erred in granting summary judgment with respect to the imposition of civil fraud penalties. He contends that the imposition of such a penalty cannot be based solely on his failure to file a tax return. *Stoltzfus v. United States,* 398 F.2d 1002, 1005 (3 Cir.1968), *cert. denied,* 393 U.S. 1020 (1969).

The fraud penalty can be imposed if the Commissioner proves "by clear and convincing evidence that taxpayers acted with an intent to evade paying taxes." *Douge v. Commissioner,* 899 F.2d 164, 168 (2 Cir.1990). Fraud can be proved by circumstantial evidence. *Id.* "Such evidence may include (1) consistent and substantial understatement of income, (2) failure to maintain adequate records, (3) failure to cooperate with an IRS investigation, (4) inconsistent or implausible explanations of behavior and (5) awareness of the obligation to file returns, report income and pay taxes." *Id.*

■ The frivolous nature of this appeal is perhaps best illustrated by our conclusion that Schiff is precisely the sort of taxpayer upon whom a fraud penalty for failure to pay income taxes should be imposed. It is an understatement to say that Schiff has consistently and substantially under reported his income. The fact is that "he has not filed tax returns since 1973." *Schiff v. Simon & Schuster, Inc., supra,* 780 F.2d at 211.

A brief review of Schiff's history in this court provides substantial support for our holding that his failure to file tax returns for the years 1976 through 1978 was a fraudulent attempt to evade taxes. He was convicted of willfully failing to file tax returns for the years 1974 and 1975. We affirmed that conviction without opinion, *United States v. Schiff, supra,* 647 F.2d 163, and the Supreme Court denied certiorari. 454 U.S. 835. In addition, tax deficiencies and civil penalties were assessed against Schiff for his failure to file tax returns for those years. *Schiff v. Commissioner, supra,* 751 F.2d at 117. Schiff also was convicted of attempted tax evasion for the years 1980 through 1982 and for failing to file a corporate income tax return for the year 1981, *United States v. Schiff, supra,* 801 F.2d 108, and again the Supreme Court denied certiorari. 480 U.S. 945. Moreover, Schiff's background makes it inconceivable that he was unaware of his obligation to file returns and pay taxes. In light of Schiff's repeated attempts to evade

his obligation to pay income taxes, we hold that summary judgment was justified on the issue of whether civil fraud penalties were properly assessed because of his failure to file returns for the years 1976 through 1978.

We hold that there was no genuine issue of material fact to preclude the district court from granting summary judgment in favor of the government.

## IV.

This brings us to Schiff's contention that the district judge erred in failing to recuse himself. Schiff contends that the judge should have recused himself since he ruled against Schiff in Schiff's attempt to prevent Simon & Schuster from cooperating in the IRS attachment proceeding. This contention is totally lacking in merit. Prior adverse rulings "without more, ... do not provide a reasonable basis for questioning a judge's impartiality." *United States v. Wolfson*, 558 F.2d 59, 64 (2 Cir.1977). There is nothing in the record to suggest that the judge was unable to render an unbiased decision. Indeed, were we to adopt the bright line rule that Schiff suggests, litigious individuals might run out of judges before whom their cases could be heard.

We hold that the district judge did not err in deciding not to recuse himself.

## V.

Having held that Schiff's contentions are frivolous, we turn now to the matter of sanctions. We do not undertake lightly a decision to impose sanctions pursuant to Fed.R.App.P. 38. However, "[r]eady as we are to protect and enforce [a litigant's] rights, we must be equally willing to employ lawful sanctions as a means of preventing needless waste of the court's time and resources." *Acevedo v. INS*, 538 F.2d 918, 920 (2 Cir.1976) (per curiam).

As demonstrated above, we repeatedly have rejected Schiff's attacks on the tax system, which he has raised in this Court on numerous occasions. Indeed, we imposed sanctions on Schiff for asserting, on his appeal from the assessment of tax deficiencies resulting from his failure to pay income taxes for the years 1974 and 1975, issues very similar to the ones raised on the instant appeal. *Schiff v. Commissioner, supra*, 751 F.2d at 117. Moreover, we previously have described Schiff as "an extremist who reserve[s] the right to interpret the decisions of the Supreme Court as he read[s] them from his layman's point of view regardless of and oblivious to the interpretations of the judiciary." *United States v. Schiff, supra*, 612 F.2d at 75.

We conclude that the instant appeal is yet another in a series of frivolous appeals brought by Schiff "to make public his radical views on tax reform." *Schiff v. Commissioner, supra*, 751 F.2d at 117. We cannot countenance Schiff's continued resort to this Court to "rehash ... his basic thesis: [that] he does not have to pay taxes." *United States v. Schiff, supra*, 876 F.2d at 275. "The payment of income taxes is not optional ... and the average citizen knows that the payment of income taxes is legally required." *Id.* (citations omitted).

The imposition of sanctions against litigants who continuously abuse the appellate process is justified. *E.g., In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2 Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1206 (1983); *In re Hartford Textile Corp.*, 659 F.2d 299, 303–06 (2 Cir.1981) (per curiam), *cert. denied*, 455 U.S. 1018 (1982); *Browning Debenture Holders' Comm. v. DASA Corp.*, 605 F.2d 35, 40 n. 5 (2 Cir.1979). We hold that " 'the situation here is one of those "highly unusual" instances which permit the imposition of sanctions under Rule 38 because of "a clear showing of bad faith".' " *In re Hartford Textile Corp., supra*, 659 F.2d at 305 (citation omitted). We order that double costs in this Court and $5,000 damages be awarded against Schiff, to be paid to the United States.

"To make the sanction effective and thereby protect the processes of a court from abuse, a litigant against whom Rule 38 sanctions have been imposed must com-

ply with those sanctions before being permitted to pursue new matters in that court." *Schiff v. Simon & Schuster, Inc.,* *supra,* 766 F.2d at 62 (footnote omitted). Accordingly, we further order that the clerk of this Court shall not accept any more papers from Schiff for filing except upon proof of payment of the above sanction. *E.g., In re Martin–Trigona,* 795 F.2d 9, 12 (2 Cir.1986) (per curiam); *Johl v. Johl,* 788 F.2d 75, 76 (2 Cir.) (per curiam), *cert. denied,* 479 U.S. 858 (1986); *Schiff v. Simon & Schuster, Inc., supra,* 766 F.2d at 62; *In re Hartford Textile Corp., supra,* 681 F.2d at 897–98. This prohibition against further filings does not apply to any petition for rehearing, petition for rehearing en banc, or petition for certiorari—*in this case.*

We order that the mandate issue forthwith; that the judgment of this Court include the provisions for double costs and damages as ordered above; that execution on the judgment of this Court for damages issue forthwith; and that execution on the judgment of this Court for costs issue within ten days of the date of the taxation of costs according to law. *In re Hartford Textile Corp., supra,* 659 F.2d at 305–06.

### VI.

To summarize:

We hold that there was no genuine issue of material fact to preclude the district court from granting summary judgment in favor of the government. We further hold that the district judge did not err in declining to recuse himself. In light of the frivolous nature of this appeal and Schiff's pattern of bringing such appeals, we order that double costs in this Court and $5,000 damages be awarded against Schiff, to be paid to the United States. We further order that the clerk of this Court shall not accept any more papers for filing from Schiff except upon proof of payment of the above sanction.

Affirmed with double costs and $5,000 damages against Schiff.