Thomas–Anthony CLAVIZZAO,
Susanna Armbruster,
Plaintiffs,

v.

UNITED STATES of America (IRS)
and HSBC Bank, USA, N.A.,
Defendants.

Case No. 08–CV–06434 (KMK).

United States District Court,
S.D. New York.

Sept. 30, 2009.

Thomas–Anthony Clavizzao, Susanna Armbruster, New Windsor, NY, Pro Se Plaintiffs.

James N. Boeving, Esq., United States Attorney's Office, Southern District of New York, New York, NY, for Government.

Meredith L. Friedman, Esq., HSBC Bank U.S.A., N.A., Buffalo, NY, for HSBC Bank, U.S.A., N.A.

### OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Plaintiffs Thomas–Anthony Clavizzao and Susanna Armbruster, proceeding pro se, bring this action against the United States of America, Internal Revenue Service ("IRS") and HSBC Bank, USA, N.A. ("HSBC"). Plaintiffs complain that the IRS placed liens on and levied money from their joint bank account and Mr. Claviz-

zao's pension and Social Security checks, and that HSBC complied with these liens and levies. (Am. Compl. ¶ 2.)

Plaintiffs assert that the IRS acted without statutory or constitutional authority because, *inter alia*, taxation of income is not authorized by the Constitution or statute (*id.* ¶¶ 4, 18); Clavizzao is not a citizen of the United States, but rather a citizen of New York (*id.* ¶¶ 22–23); tax liens and levies are only proper as against federal employees (*id.* ¶ 18); the relevant tax forms have not been published in the Federal Register (*id.* ¶ 19); and the Internal Revenue Code ("I.R.C.") has not been enacted into "positive law" (*id.* ¶ 26). As a result of these and other supposed infirmities, Plaintiffs claim that Defendants exceeded their legal authority (*id.* ¶ 48), seized property unlawfully and without due process (*id.* ¶¶ 30, 33, 49, 73–75, 91–92), fraudulently represented their authority (*id.* ¶ 77), and committed various other torts, (*id.* ¶¶ 77–78, 80, 83, 85–86).

Plaintiffs also seek to hold HSBC liable, under negligence and civil conspiracy theories, for complying with the IRS tax levy. (Order to Show Cause—Pet. to Reverse Order, June 26, 2009, ("Pet. to Reverse") ¶¶ 3, 10.) Plaintiffs have asked for (1) an injunction forbidding the IRS from current and future collection activities (Am. Compl. ¶ 84); (2) a declaratory judgment that Clavizzao is not subject to federal income tax laws (*id.*, Prayer for Relief ¶¶ 3–6);[1] (3) a refund of all funds taken from them (*id.*, Prayer for Relief ¶ 3.); and (4) damages (*id.*).

The Government filed a Motion to Dismiss this action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 8.) For

---

1. Plaintiffs' complaint is numbered 1–95, and then begins a separate "Prayer for Relief," numbered 1–8.

the following reasons, the Court grants the Government's 12(b)(1) motion.

Also, the Court previously ordered Plaintiffs to show cause why their claims against HSBC should not be dismissed for failure to state a claim under Rule 12(b)(6). (Dkt. No. 22.) Because they have failed to do so, the Court also dismisses Plaintiffs' claims against HSBC.

## I. Background

### A. Facts

Mr. Clavizzao was born in New York state and is currently a retired New York resident. (Am. Compl. ¶¶ 8, 16.) He is the caretaker for Ms. Armbruster, and is a co-signer on her bank account. (*Id.* ¶ 8.) On April 13, 2001, the IRS sent Mr. Clavizzao a Notice of Intent to Levy. (*Id.,* Ex. A at 6.)[2] On January 15, 2008, Clavizzao sent the IRS a "constructive notice," in which he claimed that he had no obligation to conform with the requirements of Title 26 of the United States Code. (Compl. ¶ 11; *see also id.* Ex. A.)

Records from the IRS reveal the following additional facts.[3] Clavizzao has not filed a tax return since 1996, and he owes approximately $32,000 for the tax years 1997, 2000, and 2001. (Decl. of Carolyn Fields ¶¶ 2–6 ("Fields Decl.").) On December 11, 2004, Clavizzao received a Notice of Intent to Levy and a Collection Due Process notice ("CDP notice") regarding back taxes owed. (*Id.* ¶ 7.) The CDP notice was refused or unclaimed on February 24, 2005. (*Id.*) On April 11, 2005, Clavizzao was issued another Notice of Intent to Levy and another CDP notice for taxes due for 2002. (*Id.* ¶ 11.) There is no record that Clavizzao exercised the rights outlined in the CDP notices (*id.* ¶¶ 8, 12), or that he disputed the amounts owed (*id.* ¶¶ 3–6). Levy payments began on June 6, 2005, and continue to the present. (*Id.* ¶ 9.) Neither Plaintiff has filed for a tax refund or otherwise pursued their administrative remedies. (*Id.* ¶¶ 15–16.)[4]

### B. Procedural History

Plaintiffs filed the initial Complaint in this action on July 18, 2008. (Dkt. No. 1.) The Amended Complaint was filed on September 19, 2008. (Dkt. No. 5.) The pending Motion to Dismiss the Amended Complaint was filed on November 12, 2008. (Dkt. No. 15.) Plaintiffs filed their Opposition to Defendant's Motion to Dismiss on December 15, 2008. (Dkt. Nos. 13, 14.)[5] On December 22, 2008, the Government filed its reply. (Dkt. No. 18.)

On June 3, 2009, the Court ordered Plaintiffs to show cause why their complaint against HSBC should not be dismissed for failure to state a claim. (Dkt. No. 22.)[6] On June 26, 2009, Plaintiffs

---

2. Mr. Clavizzao also references a Notice of Intent to Levy sent to a third party dated August 29, 2005. (Compl. ¶ 48.)

3. This Court may consider these facts only in ruling on the Government's motion to dismiss under 12(b)(1). *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir.2002) ("Because the defendants' challenge is to subject matter jurisdiction, we may consider materials extrinsic to the complaint.").

4. IRS records also show that Ms. Armbruster owes taxes for 2003, but that the IRS has not initiated any collection efforts. (Fields Decl. ¶ 14.)

5. Plaintiffs submitted two documents, entitled, "Response to Motion to Dismiss," and "Affidavit of Sovereignty." The Court will take the documents together as constituting Plaintiffs' Opposition to Defendants' Motion to Dismiss.

6. The Court's June 3, 2009 show cause order was based on 26 U.S.C. § 6332, which requires that "any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights ... to the Secretary...." 26 U.S.C. § 6332(a). If the custodian of the property (in this case HSBC) honors the levy, it is

submitted a brief entitled "Order to Show Cause Answer—Petition to Reverse Order." (Dkt. No. 23.) HSBC responded on July 15, 2009.

## II.  Discussion

### A.  Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(1), plaintiffs must establish by a preponderance of the evidence that the court has subject matter jurisdiction over their claims. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). In considering 12(b)(1) motions, a court may rely on evidence extrinsic to the pleadings. *See Phifer,* 289 F.3d at 55; *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986).

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008); *see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.") (internal quotation marks omitted). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted) (second alteration in *Twom-*

*bly* ). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.,* and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955.

Simply put, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint[s] must be dismissed." *Id.; see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (internal citation omitted) (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original)).

Finally, in adjudicating a Rule 12(b)(6) motion, a court must confine its consideration to "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference" or facts of which the Court may take judicial notice. *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005); *see also Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999).

When presented with both 12(b)(1) and 12(b)(6) motions, courts normally consider the 12(b)(1) motion first in order to establish jurisdiction before proceeding to the

---

"discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment." *Id.* § 6332(e). The Court noted that

"courts consistently have held that a party who complies with a levy is not liable to the claimant of the property." (Order, June 3, 2009, at 7.)

merits. *See Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 155 (2d Cir.1996) ("Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case."); *cf.* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Pleadings submitted by pro se litigants are held to a lesser standard than those drafted by practicing attorneys. *See Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties."). Because Plaintiffs are proceeding pro se, the Court construes their pleadings liberally so as to interpret them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006).

### B. Analysis

#### 1. Claims Against the IRS

■ The IRS claims that the Court lacks jurisdiction based on sovereign immunity. Sovereign immunity dictates that the United States cannot be sued without its consent. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Thus, "[w]hen an action is brought against the United States government," waiver of "sovereign immunity is necessary for subject matter jurisdiction to exist." *Williams v. United States,* 947 F.2d 37, 39 (2d Cir.1991). The sovereign immunity doctrine extends to federal agencies. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). Here, Plaintiffs cite no statute in which the Government consented to suits of this kind. To the contrary, Congress has specifically withheld its consent in a number of applicable statutes.

■ First, the Tax Anti–Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a); *see also Bob Jones Univ. v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (noting that the Tax Anti–Injunction Act's "language could scarcely be more explicit"); *Randell v. United States,* 64 F.3d 101, 106 (2d Cir.1995) ("In the context of tax assessments and collections the government's sovereign immunity has been codified by the [Tax] Anti–Injunction Act...."). Since Mr. Clavizzao admits to being a "person" (Aff. of Sovereignty ¶ 2 ("I am a living soul flesh and blood man ....")), neither he nor Ms. Armbruster may seek an injunction forbidding the IRS from collecting past or future taxes. In fact, under the Tax Anti–Injunction Act, a plaintiff cannot even seek an injunction preventing the IRS from investigating tax liabilities in an allegedly discriminatory or harassing fashion. *See Black v. United States,* 534 F.2d 524, 526 (2d Cir.1976) (holding that "[h]owever injured the plaintiffs may be," by the IRS's allegedly racially motivated investigation "they have pursued the wrong course in seeking redress of their grievances" because "[i]njunctive relief ... is barred by the [Tax] Anti–Injunction Act"); *cf. Linn v. Chivatero,* 714 F.2d 1278, 1286–87 (5th Cir.1983) ("[The Tax Anti–Injunction Act] is applicable not only to the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well.").

■ Second, the Declaratory Judgment Act ("DJA") similarly bars Plaintiffs' demand that the Court declare Clavizzao immune to the IRS's collection power. *See Alexander v. Am. United, Inc.,* 416 U.S. 752, 759 n. 10, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974) ("[I]t is ... clear that the feder-

al tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the [Tax] Anti–Injunction Act."). In particular, the DJA forbids courts from declaring obligations "with respect to Federal taxes." 28 U.S.C. § 2201(a); *see also Black*, 534 F.2d at 527 n. 3 ("28 U.S.C. § 2201, which generally provides for declaratory judgments, contains a specific exception for matters relating to federal taxes."); *Lapadula & Villani, Inc. v. United States*, 563 F.Supp. 782, 784 (S.D.N.Y. 1983) ("The Declaratory Judgment Act expressly provides that a Court may not declare the rights and other legal relations of interested parties where federal taxes are in issue.") (internal citation omitted).

Accordingly, courts routinely dismiss requests for judgments declaring federal tax obligations, even in the face of "lengthy recital[s] of assumed violations of constitutional rights." *Jolles Found. v. Moysey*, 250 F.2d 166, 169 (2d Cir.1957); *see also Laing v. United States*, 496 F.2d 853, 854 (2d Cir.1974) (finding no jurisdiction over plaintiff's request to issue "a declaratory judgment that the provisions of the Internal Revenue Code under which the assessment and levy on [plaintiff's] property were made were unconstitutional"), *rev'd on other grounds*, 423 U.S. 161, 96 S.Ct.

473, 46 L.Ed.2d 416 (1976); *Mangione v. IRS*, No. 97–CV–9439, 1998 WL 401538, at *3 (S.D.N.Y. July 17, 1998) (dismissing for lack of subject matter jurisdiction an action seeking a declaratory judgment that plaintiff is not subject to federal taxes); *Tucker v. United States*, No. 96–CV–6039, 1998 WL 708923, at *3 (E.D.N.Y. July 6, 1998) (noting that even claims of "deprivation of constitutional rights are not sufficient to" overcome the DJA's jurisdictional bar).

Third, the Federal Torts Claims Act ("FTCA") does not waive sovereign immunity for "[a]ny claim arising in respect to the assessment or collection of any tax or customs duty." 28 U.S.C. § 2680(c). Since each of Plaintiffs' many tort claims arise "in respect to the assessment or collection of" taxes, *id.*, they must be dismissed. In fact, even Plaintiffs' constitutional tort claims fair no better, because "Congress has not waived the government's sovereign immunity ... from lawsuits based on constitutional claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999); *see also Gonsalves v. United States*, 782 F.Supp. 164, 168 (D.Me.) (applying sovereign immunity to bar Fifth Amendment challenge to IRS tax assessment), *aff'd*, 975 F.2d 13 (1st Cir.1992).[7]

---

**7.** This Court cannot construe Plaintiffs' allegations as *Bivens* claims, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because Plaintiffs did not name specific federal agents as defendants, nor even suggest any misconduct by any particular officials other than that they carried out IRS policies and directives. *See Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 474, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (refusing to extend *Bivens* to federal agencies and noting that individual defendants must be named); *Shearing v. United States*, No. 90–CV–973A, 1993 WL 146520 (W.D.N.Y. Jan. 25, 1993) (dismissing claims that are nearly identical to Clavizzao's for lack of subject matter jurisdiction, and imposing sanctions, rather than construing the complaint as a *Bivens* claim

against unnamed IRS employees), *modified on other grounds*, 1993 WL 559026 (W.D.N.Y. Sept. 7, 1993). In any event, even if the Court did construe Plaintiffs' claims as *Bivens* claims, they would be time-barred because this suit was instituted more than three years after Plaintiffs knew or should have known of the alleged constitutional violations. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir.1987) (noting that, in New York, the statute of limitations for *Bivens* claims is three years). Plaintiffs should have been aware of the alleged constitutional violations when they received the two IRS Notices of Intent to Levy on December 11, 2004, and April 11, 2005, respectively. (Fields Decl. ¶¶ 7, 11.) And Plaintiffs certainly should have been aware of the purported violations by June 6, 2005,

■ Finally, while the United States does allow suits for tax refunds in certain circumstances, *see* 28 U.S.C. 1346 § (a)(1), Plaintiffs do not meet the conditions of this limited waiver of sovereign immunity. *See United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (noting that Congress may impose conditions on waivers of sovereign immunity). A plaintiff suing in federal court for a tax refund must establish that he or she has filed a proper and timely administrative claim with the IRS, *see* 26 U.S.C. 7422(a), received a final notice of denial from the IRS or failed to receive a decision on the claim within six months of its filing, *see id.* § 6532(a), and brought suit in federal court within two years of receiving notice from the IRS that it denied the refund, *see id.* Plaintiffs have failed to so allege, and the IRS's records indicate that neither Plaintiff has filed for a tax refund or otherwise pursued any administrative remedies. (Fields Decl. ¶¶ 15–16.) Thus, Plaintiffs' tax refund claim must be dismissed. *See Magnone v. United States,* 902 F.2d 192 (2d Cir.1990) (dismissing tax refund claim under § 7422(a) for failure to request a refund from the IRS); *Altman v. Connally,* 456 F.2d 1114, 1115–16 (2d Cir.1972) ("Insofar as the complaint seeks a refund for any revenue taxes alleged to have been erroneously or illegally assessed, the complaint failed to allege, as required by § 7422(a), that a claim has been duly filed with the Internal Revenue Service. . . .").

■ Federal courts also lack subject matter jurisdiction over a refund suit where the taxpayer has not made full payment of the assessment. *See Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *Magnone,* 902 F.2d at 193. Because Mr. Clavizzao still owes payments on the taxes assessed against him (Fields Decl. ¶¶ 3–6), the "full payment" rule requires that this Court dismiss Plaintiffs' refund claim.

In the end, the Court finds instructive the decision in *Shearing v. United States,* No. 90–CV–973A, 1993 WL 146520 (W.D.N.Y. Jan. 25, 1993). In that case, the plaintiff brought claims similar to those of the Plaintiffs here (including, for instance, the claim that as a New York citizen, plaintiff was not a United States Citizen subject to taxation). Not only did the Court dismiss the claims for lack of subject matter jurisdiction, *id.* at *4, it also, sua sponte, imposed a $2,000 sanction on the plaintiff, *id.* at *6–7.[8] Here, the Court will not impose any sanctions, but the Court finds that it does not have subject matter jurisdiction over Plaintiffs' claims against the IRS, and therefore does not reach the merits of the claims. *See id.* at *1.

### 2. Claims Against HSBC

On June 3, 2009, the Court issued an Order to Show Cause, directing Plaintiffs to explain why the claims against HSBC should not be dismissed for failure to state a claim. (Order, June 3, 2009, at 9. ("Order").) In particular, the Court noted that Plaintiffs seek to hold HSBC responsible for honoring a levy put on Plaintiffs' HSBC accounts related to tax liabilities. Plaintiffs specifically allege that HSBC is "acting as [an] agent[ ] for the IRS [and is] removing money from [Plaintiffs'] account[s] on behalf of the IRS without lawful authority." (Am. Compl. ¶ 8.) Plaintiffs

---

when levy payments began. (*Id.* ¶ 9.) Yet, Plaintiffs did not file their Complaint until July 18, 2008, more than three years later.

8. On motion for reconsideration, the court modified the sanction to an injunction forbid-

ding the plaintiff from filing similar lawsuits in that district in the future, citing plaintiff's inability to pay and his acceptance of responsibility for filing a frivolous suit. *See Shearing v. United States,* No. 90–CV–973A, 1993 WL 559026 (W.D.N.Y. Sept. 7, 1993).

therefore seek "return of all money taken from [Clavizzao's] account at HSBC ... and all money taken from the [HSBC] account of Susanna Arnbruster." (*Id.* Prayer for Relief, ¶ 3.) Plaintiffs also seek compensation, damages in the amount of $100,000, punitive damages and injunctive relief. (*Id.* Prayer for Relief, ¶¶ 3–5.)[9] In the Order to Show Cause, the Court, citing several cases, asked Plaintiffs to explain why the case against HSBC should not be dismissed if all HSBC is alleged to have done is carry out the IRS levies. (Order 6–7.) Plaintiffs responded on June 26, 2009. (Dkt. No. 23.) HSBC replied on July 15, 2009. (*See* Def. HSBC's Mem. of Law in Opp'n to Pls' Mot. Pursuant to Rule 12.)

■ Having evaluated Plaintiffs' claims against HSBC, the Court concludes that those claims fail as a matter of law because HSBC is protected from all liability arising from its compliance with IRS levies. Under 26 U.S.C. § 6332(e),

> [a]ny person in possession of ... property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property ... to the Secretary ... shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to such property arising from such surrender or payment.

Section 6332(e) has been "consistently interpreted to be valid" and "unambiguously ... protect[s] parties who comply with an IRS notice of levy from facing liability." *Dietz v. Trustco Bank*, 572 F.Supp.2d 296, 298 (N.D.N.Y.2008) (citations omitted); *see also Schiff v. Simon & Schuster, Inc.*, 780 F.2d 210, 212 (2d Cir.1985) ("Compliance with the obligation to honor the levy extin-

guishes liability to the claimant of the property."); *Smith v. Kitchen*, 156 F.3d 1025, 1029 (10th Cir.1997) ("[S]ection 6332(e) ... clearly bars money damages against a person who has complied with an IRS levy.").

Plaintiffs base their claims against HSBC on that institution's execution of the IRS levy. There is no allegation that HSBC failed to carry out the levy consistent with the procedural and other requirements of the Internal Revenue Code—by, for example, failing to wait the requisite twenty-one days after service of the levy before surrendering Plaintiffs' accounts. *See* 26 U.S.C. § 6332(c). Because Plaintiffs have not alleged that HSBC executed the levy in a manner inconsistent with the Internal Revenue Code, the law plainly relieves HSBC from any liability in this case and requires dismissal. *See Dietz*, 572 F.Supp.2d at 298–99 (dismissing tax protester's claim against bank because "[a]t no point does Plaintiff suggest that [the bank] interfered with his property other than pursuant to a notice of levy from the IRS").

Plaintiffs broad allegation that HSBC was negligent in executing the levies does not change this result. Plaintiffs contend that "HSBC Bank had the duty to insure that plaintiff(s) ... were afforded proper due process rights ... before money is taken." (Pet. to Reverse ¶ 7.) But Section 6332(e) makes clear that HSBC has no such duty. *See Dietz*, 572 F.Supp.2d at 298 (noting that § 6332(e) defeats plaintiff's claim that before "turning [his] money over to the IRS, [the bank] had a responsibility ... to determine if it would be a taking and [violate] constitutional restrictions").

To the extent that Plaintiffs' Amended Complaint can be read to make other neg-

---

**9.** Plaintiffs moved for a default judgment, but the Court denied that motion in the Order to Show Cause. (Order 9.)

ligence claims, they are woefully non-specific, failing to identify what duty HSBC owed Plaintiffs (beyond that provided for in the IRC), and how HSBC breached that duty. (*See, e.g.,* Pet. to Reverse ¶ 15 ("HSBC Bank withdr[ew] Plaintiffs' money ... without Plaintiffs' understanding or consent ... and ... without just cause."); *id.* ¶ 19 ("[HSBC] behaved negligently by transferring Plaintiffs money to the IRS agency without due care.").) While the Court recognizes Plaintiffs are proceeding pro se, their conclusory allegation of negligence is not enough, by itself, to state a claim against HSBC. *See Schiff,* 780 F.2d at 211–12 (affirming dismissal of tax protester's claim that by honoring the IRS's notices of levy, defendant committed fraud, breached a contract, and conspired to violate constitutional rights); *Kitchen,* 156 F.3d at 1027, 1029 (affirming dismissal of tax protester's claims against a bank which complied with an IRS levy, and considering sanctions, despite the protester's "cornucopia of alleged violations of his rights," because he "offered no fact or law to contradict the clear mandate of section 6332(e)"). *See generally Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions ....' ") (internal citations omitted). Accordingly, this Court dismisses Plaintiffs' claims against HSBC.

### III.  Conclusion

For the reasons stated herein, the Government's motion to dismiss is granted and Plaintiffs' claims against HSBC are dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.